**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLARENCE G. ROWAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 CV 08923 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BLATT, HASENMILLER, LEIBSKER &, | ) | |
| MOORE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clarence G. Rowan is suing Defendant Blatt, Hasenmiller, Leibsker & Moore LLC (Blatt), for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Rowan alleges that Blatt violated § 1692i(a) when it filed a collection suit against him in a state-court judicial district where he neither resided nor signed the underlying debt contract, and that Blatt violated § 1692f when it sought to garnish his wages.[1] *See* R. 22, Amended Compl. at 4-5. Both Rowan and Blatt have now moved for summary judgment on whether Blatt's decision to file its collection lawsuit in the Circuit Court of Cook County's First Municipal District as opposed to its Fifth or Sixth Municipal District was the result of a "bona fide error" or is otherwise subject to an affirmative defense. *See* R. 32, Def.'s Br. and R. 35, Pl.'s Br. Blatt contends that it is. Rowan contends that it is not, and moves instead for summary judgment in his favor on this claim. Pl.'s Br. at 1.

---

[1]The Court has subject matter jurisdiction over this case, which arises under 15 U.S.C. § 1692, pursuant to 28 U.S.C. §§ 1331 and 1337.

Blatt has also moved for summary judgment on the issue of whether it was precluded from garnishing Rowan's wages because of an agreement between the parties. Def.'s Br. at 15. For the reasons stated below, this Court denies Blatt's motion in its entirety and grants Rowan's motion in part. Specifically, the Court grants Rowan's motion as to Blatt's affirmative defenses and as to all but one element of Rowan's venue claim—whether Rowan is a "consumer" under § 1692a(3). The Court authorizes Rowan to file a second summary judgment motion addressing this last element.

## I. Background

The facts in this case (at least those presented in the current round of briefing) are largely undisputed. In 2008, Rowan obtained financing from Toyota Motor Credit Corporation to purchase a 2003 Cadillac Deville from a Lexus dealership in Orland Park, Illinois. R. 34, PSOF, Exh. 3 at 3-8. Rowan soon fell behind on his payments and the car was repossessed. *Id.* at 3-4, 7-8. After the car was sold at auction, Rowan still owed around $5,400. *Id.* at 7-8. To collect that amount, Blatt filed a collection lawsuit against Rowan on Toyota's behalf in the Circuit Court of Cook County. *Id.* at 3-4.

At that time, Rowan lived in Country Club Hills, Illinois, which is located within the Circuit Court of Cook County's Sixth Municipal District. R. 39, Def.'s Resp. to PSOF ¶ 4. The courthouse for that district is located in Markham, Illinois. *Id.* Rowan had purchased the car in Orland Park, Illinois, which is located within the Fifth Municipal District. *See* Amended Compl., Exh. 2 at 2. The courthouse for

that district is located in Bridgeview, Illinois. *Id.* Instead of filing suit in either Cook County's Fifth or Sixth Municipal District, however, Blatt filed in Cook County's First Municipal District. Def.'s Resp. to PSOF ¶¶ 2-3. The courthouse associated with that district is located at the Richard J. Daley Center in downtown Chicago. *Id.* ¶ 3.

Shortly after Blatt filed suit, Rowan sent Blatt a letter advising them that he had retained counsel, Ledford & Wu. R. 28, DSOF, Exh. 1 at 54. At the next court hearing, however, Rowan's attorney failed to appear. *Id.* at 57. As a result, the Cook County Circuit Court entered a default against Rowan and set the matter for prove-up. *Id.*

A couple weeks later, Blatt sent Rowan's attorney a proposed "Agreed Judgment Order" that called for judgment to be entered against Rowan in the amount of $5,427.45 plus costs, and that called for Rowan to make monthly installment payments of $170 starting on January 27 and continuing until Rowan had paid off his deficiency balance. *Id.* at 59-60. If Rowan agreed to the proposed terms, then the agreement stated that execution of the judgment against Rowan would be stayed. *Id.* at 60. The agreement also stated, however, that if Rowan "fail[ed] to submit any payment on time or for the full amount, [Blatt/Toyota] shall have the right to vacate the installment portion of th[e] order and execute on [the] judgment." *Id.* The agreement further specified that "acceptance by [Blatt/Toyota] of any payment made after it becomes due shall not constitute a waiver of the timeliness requirement concerning that payment, nor any future payment." *Id.*

3

According to Rowan, his attorney showed him this proposed agreement and told him that he could likely get Toyota and Blatt to "hold off" on the initial payment. DSOF, Exh. 2 at 23:17-24, 24:1-7 (Rowan's Depo.). Rowan also testified that he remembers signing the agreement, but not the exact date he signed it. *Id.* at 17:15-19, 23:4-9, 24:24-25:1-9. It is unclear from the record when exactly Rowan's attorney sent the signed agreement back to Blatt. Rowan asserts that it was on April 1, 2014, *see* R. 34, PSOF ¶ 17, while Blatt asserts that it was not until April 29, 2014, *see* DSOF ¶ 12. Nevertheless, both parties agree that it occurred in April, after the court's March 6 prove-up hearing.

At the prove-up hearing, Rowan's attorney once again failed to appear, and the Circuit Court of Cook County entered a default judgment against Rowan in the amount of $5,777.45. DSOF, Exh. 1 at 63. A few weeks later, Blatt filed an affidavit requesting a wage garnishment order. *Id.* at 65-66; R. 36, Pl.'s Resp. to DSOF ¶ 11. The court ultimately granted Blatt's request and issued a wage deduction order to Rowan's employer, Cardinal Building. *See* DSOF, Exh. 1 at 68; R. 39, Def.'s Resp. to PSOAF ¶ 21. In the meantime, Rowan sent back, through his attorney, a signed copy of the "Agreed Judgment Order" to Blatt. *See* PSOF ¶ 17; Pl.'s Resp. to DSOF ¶ 12. On that signed copy, Rowan's attorney had crossed out the original payment date, which was listed as January 27, and instead wrote in an initial payment date of April 29. Pl.'s Resp. to DSOF ¶ 12. Along with the signed agreement, Rowan sent Blatt a $170 payment, which was the monthly payment amount called for by the agreement. Def.'s Resp. to PSOF ¶ 17. Blatt accepted that payment from Rowan. *Id.*

4

¶ 18. A few months later, according to Rowan, Cardinal Building withheld approximately $120 of his wages in response to the court's wage garnishment order. PSOF ¶ 22.

Rowan filed this lawsuit in November 2014, alleging that Blatt violated the FDCPA when it filed the collection action against him in Cook County's First Municipal District, and when it garnished his wages in violation of the agreement reached between the parties. R. 1, Compl. and R. 22, Amended Compl. Both parties have since filed motions for summary judgment on whether Blatt is liable for violating the FDCPA's venue provision, 15 U.S.C. § 1692i(a)(2). Blatt contends that it is not liable under this provision because its decision to file in the First Municipal District, rather than the Fifth or Sixth, was based on the Seventh Circuit's then-controlling holding in *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), which expressly permitted debt collectors in Cook County to file in any municipal district, regardless of where the debtor resided or signed the underlying debt contract. Def.'s Br. at 4-20. Rowan contends that none of the affirmative defenses put forth by Blatt shield it from liability for filing in the wrong municipal district, and that he, rather than Blatt, is entitled to summary judgment on this claim. Pl.'s Br. at 1, 5-9. Blatt separately argues that it is also entitled to summary judgment on the issue of whether it violated § 1692f of the FDCPA when it sought to garnish Rowan's wages. Def.'s Br. at 21-23. According to Blatt, no agreement was ever reached between the parties, and therefore, nothing precluded Blatt from pursuing any post-judgment collection efforts. *Id.*

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence" at trial, Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. On cross motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005); *see also Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013).

### III. Analysis

The Court will address the parties' arguments as follows: First, the Court will address whether any affirmative defenses protect Blatt from liability under the FDCPA's venue provision. Next, the Court will address Rowan's argument that he should be granted summary judgment on his venue claim. Finally, the Court will address whether an agreement existed between Rowan and Blatt/Toyota that precluded Blatt from garnishing Rowan's wages.

### A. FDCPA § 1692i(a)(2) Challenge

### 1. Blatt's Affirmative Defenses

Rowan's initial claim is that Blatt violated the FDCPA's venue provision, 15 U.S.C. § 1692i(a)(2), when it filed its debt collection suit against him in Cook County's First Municipal District. Section 1692i(a)(2) provides that a debt collection action must be brought in the "judicial district or similar legal entity" where the "consumer signed the contract sued upon" or where the "consumer resides at the commencement of the action." At the time Blatt filed its collection suit against Rowan, *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), was the controlling law in this circuit. In *Newsom*, the Seventh Circuit held that for purposes of the FDCPA the Cook County Circuit Court comprised a single "judicial district," meaning a debt collector could file a collection suit without violating the FDCPA in any municipal district regardless of where in Cook County the consumer resided or where in Cook County the underlying debt contract was signed. 76 F.3d at 819-20. Eight months after Blatt filed its suit against Rowan, however, the Seventh Circuit overruled

7

*Newsom*. *See Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014). In *Suesz*, the Seventh Circuit held that "judicial district" instead meant the "smallest geographic area … relevant for determining venue in the court system in which the case was filed," which, in Cook County, meant the particular municipal districts rather than the County as a whole. 757 F.3d at 638. The Seventh Circuit also held that its decision applied retroactively. *Id.* at 649-50. This created a problem for Blatt. Because Rowan neither resided in nor signed his auto-loan papers in Cook County's First Municipal District, under *Suesz*, Blatt had filed suit in an improper municipal district.

Blatt now puts forth several affirmative defenses. Blatt's primary defense is that its reliance on *Newsom* was a "bona fide error." Blatt also argues that the FDCPA's "safe harbor" provision in § 1692k(e) applies, and that *Suesz* should not be applied retroactively to its case. The Court will address each argument in turn.

The FDCPA's bona fide error defense is contained in § 1692k(c). To qualify for this defense, a defendant must show: (1) that the presumed FDCPA violation was not intentional, (2) that the violation resulted from a bona fide error, and (3) that the defendant maintained procedures reasonably adapted to avoid any such error. *See* 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Svcs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The parties appear only to dispute the second element: whether Blatt's reliance on *Newsom* constituted a bona fide error.

Rowan contends that the Supreme Court's decision in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), in which the Court held

that the "bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of the [Act]," *id.* at 605-06, is directly on point and precludes Blatt from relying on this defense. *Jerman* involved a debt collector that filed suit in Ohio and sent notice to a consumer that the consumer's debt would be presumed valid unless disputed in writing. At the time the debt collector sent its notice, courts were split on whether an "in writing" requirement imposed by a debt collector violated the FDCPA. *Compare Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (holding that an "in writing" requirement did not violate the FDCPA), *with Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (holding that an "in writing" requirement did violate the FDCPA). When the consumer sued the debt collector for violating the FDCPA, the debt collector argued that its reliance on the Third Circuit's decision in *Graziano* was a bona fide error.

The Supreme Court was not persuaded. It rejected the debt collector's argument and instead held that the FDCPA's bona fide error defense does not "shield violations resulting from misinterpretations of the requirements of the [FDCPA]." *Jerman*, 559 U.S. at 588. The Court explained that the statutory text setting forth the defense did not mention errors of *law*, and when viewed against the long-standing principle that ignorance of the law does not avoid civil liability, combined with the other instances in which Congress did explicitly write errors-of-law exceptions into statutory text, the absence of textual support for the defense dictated that the defense does not apply to mistakes of law. *Id.* at 581-84.

9

Blatt asserts that Rowan is reading too much into *Jerman*, and that the Supreme Court's holding is actually much narrower than Rowan suggests. According to Blatt, *Jerman* only reaches FDCPA violations "*resulting from a debt collector's* incorrect interpretation of the requirements of th[e] [FDCPA]," and not from another entity's (like a court's) incorrect interpretation. R. 38 (Def.'s Resp. Br.) at 3 (quoting *Jerman*, 559 U.S. at 604-05). Thus, Blatt argues, *Jerman* does not prevent it from relying on the FDCPA's bona fide error defense.

In making this argument, Blatt relies heavily on the Seventh Circuit's decision in *Kort v. Diversified Collection Svcs., Inc.*, 394 F.3d 530 (7th Cir. 2005). *Kort* involved a debtor who had procured a student loan governed by the Higher Education Act (HEA), 20 U.S.C. § 1070, and administered by the Department of Education. *Kort*, 394 F.3d at 532. Under the HEA, loan guarantors could garnish a debtor's wages, but they had to give notice to the debtor first. *Id.* at 533. To ensure compliance with the HEA, the Department of Education drafted a form notice that it required guarantors to use when initiating garnishment proceedings. *Id.* at 533-34. The debt collector in *Kort* used the Department of Education's required language word-for-word in the notice that it sent to the debtor. *Id.* at 534. But by doing so, the debt collector violated the FDCPA. *Id.* Under those circumstances, the Seventh Circuit held that the debt collector could rely on the bona fide error defense. In its ruling, the court distinguished between mistakes of law resulting from a debt collector's "legal judgment" and "mistake[s]" resulting from reliance on the government's interpretation of the law. *Id.* at 538 n.9. The Seventh Circuit

10

explained that because the debt collector in *Kort* followed the Department of Education's interpretation of the law—the department charged with administering the HEA—the debt collector "did not exercise any 'legal judgment' of its own." *Id.* The Seventh Circuit stated that in that case, "any mistake by [the debt collector] … was not [a] mistake of law … ." *Id.* Blatt argues the same rationale applies here.

Neither *Jerman* nor *Kort* actually support Blatt's contention. At the outset, the Supreme Court's holding in *Jerman* is not so narrow, and although *Kort* may seem persuasive, there are several important distinctions between *Kort* and this case. First, it is important to note that *Kort* was decided before *Jerman*, so *Kort* did not have to consider the impact of *Jerman* on its decision. Second, *Kort* involved the HEA not the FDCPA. *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2015 WL 5117077, at *4 (N.D. Ill. Aug. 28, 2015). So, although it is possible that *Jerman* might not apply in the scenario presented in *Kort*, there is no question that *Jerman* does apply to FDCPA cases like this one. Here, Blatt is asking this Court to extend the bona fide error defense to include exactly what the Supreme Court held it cannot: a *legal*-issue misinterpretation of the FDCPA's requirements. *Jerman*, 559 U.S. at 588. Finally, Blatt is not facing nearly the same predicament, or Catch-22, that trapped the debt collector in *Kort*. In *Kort*, the Department of Education mandated that the debt collector use its interpretation of the HEA, leaving no room for the debt collector to insert its own interpretation. *Newsom* made no similar mandate. *Newsom* simply held that a debt collector *could* file its collection suit in any municipal district; it left the decision of which specific municipal district to the

debt collector. Thus, under *Newsom*, Blatt could have filed suit in Cook County's Fifth or Sixth Municipal District. *Portalatin*, 2015 WL 5117077, at *4. It chose not to. By making that choice, Blatt exercised its own judgment, something the debt collector in *Kort* was precluded from doing. *Kort* does not save Blatt from liability, or remove it from *Jerman*'s grasp.

Blatt also asserts that its case is distinguishable from *Jerman* in another way. Blatt argues that unlike the debt collector in *Jerman* who relied on non-controlling precedent, in this case, Blatt was relying on binding precedent that was not subject to a Circuit split and that had been in place for eighteen years. According to Blatt, the fact that there was a Circuit split in *Jerman* meant that it was unreasonable for that debt collector to rely on any one court's interpretation of the statutory provision at issue, and that under those circumstances, it was "as though there was no decision at all, leaving the issue to the debt collector's 'legal judgment.'" Def.'s Resp. Br. at 5. Here, however, Blatt contends that by relying on *Newsom*—which was controlling at the time and not subject to a Circuit split—it exercised no legal judgment of its own. Def.'s Br. at 6. The difficulty with Blatt's argument, however, is that *Jerman* did not distinguish between controlling and non-controlling precedent, or between debt collectors who exercise independent legal judgment and those who do not. *Portalatin*, 2015 WL 5117077, at *4. Nowhere in *Jerman* does the Supreme Court suggest that the debt collector involved may not have exercised its own legal judgment because it relied on Third Circuit precedent. But even if it did, it would not help Blatt because, as discussed above, Blatt did

12

exercise its own legal judgment in this case when it chose to file in Chicago as opposed to Bridgeview or Markham. *Id. Jerman* is controlling and precludes Blatt from relying on the FDCPA's bona fide error defense.

Blatt separately asserts that it is shielded from liability under the FDCPA's safe harbor provision, which is contained in § 1692k(e). That provision states that a debt collector is not liable for acts done or omitted "in good faith in conformity with any advisory opinion of the [Consumer Financial Protection] Bureau, notwithstanding that after such act or omission occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 1692k(e); *see also* § 1692a(1) (defining "Bureau" as "the Bureau of Consumer Financial Protection"). Blatt argues that "[j]udicial interpretations," and in particular "appellate court decisions that are binding on the courts … warrant *at a minimum* the same weight as an [] advisory opinion" of the Bureau. Def.'s Br. at 10. Although that might be true when deciding, as a general matter, whether an interpretation of the law is correct, that is not the issue as to the applicability of the safe harbor provision: the Court cannot read more into § 1692k(e) than the statutory language allows. Where the plain language of a statute is clear, "the plain language is conclusive." *See United States v. Ye*, 588 F.3d 411, 414-15 (7th Cir. 2009); *see also United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). In this case, Section 1692k(e)'s meaning is clear: It provides that a debt collector that acts in reliance on an advisory opinion of the Bureau cannot be held liable even if that

opinion is later rescinded or reversed. It says nothing about an opinion of the courts. This Court will not extend § 1692k(e)'s reach beyond its clear meaning.

Blatt's final argument is that *Suesz* should not be applied retroactively. Def.'s Br. at 10. The difficulty for Blatt, however, is that the Seventh Circuit expressly held that it should. *Suesz*, 757 F.3d at 649. Blatt tries to get around this holding by asserting that the court's ruling was "limited to debt collectors in Marion County," Def.'s Br. at 10, but the Seventh Circuit imposed no such limitation on its holding. Indeed, it is also uncertain whether decisions in civil cases can *ever* be afforded only prospective application, as Blatt requests. To be sure, in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), certain members of the Supreme Court suggested that this might remain a possibility, at least "to avoid injustice or hardship to civil litigants who have justifiably relied on prior law." *Id.* at 110-13 (Kennedy, J., concurring in part and concurring in the judgment). But that suggestion came in a concurrence, and not as part of the majority opinion. *Id.* (quoting *Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 199, 110 (1990) (plurality opinion)). This Court cannot disregard controlling Seventh Circuit authority on the basis of non-binding (and, at best, conflicting) Supreme Court precedent.

Blatt also asserts that the Supreme Court's decision in *Chevron Oil v. Huson*, 404 U.S. 97 (1971), applies here and counsels against the retroactive application of *Suesz*. In *Chevron Oil*, the Supreme Court put forth three factors to be used when determining whether a particular holding applies retroactively in the civil context. If this Court were to apply *Chevron Oil* to this case, the result might well be against

the retroactive application of *Suesz*. But *Chevron Oil* was not nearly the last word on retroactivity in civil cases. In *Harper*, a majority of the Supreme Court held that if the case announcing a new rule of federal law itself applies that rule retroactively, that retroactive application "must prevail over any claim based on a *Chevron Oil* analysis." 509 U.S. at 98; *see also Conroy v. Blatt*, 2015 WL 5821642, at *3 (N.D. Ill. Oct. 1, 2015). Given the Supreme Court's holding in *Harper* and the Seventh Circuit's holding in *Suesz*, Blatt's reliance on *Chevron Oil* is misplaced. *Suesz*, therefore, must be deemed retroactive.[2]

Beyond these defenses, Blatt also puts forth several other affirmative defenses in its answer to Rowan's complaint. For example, Blatt asserts that Rowan's venue claim should be defeated because he failed to mitigate damages, and that his claim should be barred by the doctrines of collateral estoppel and waiver because he failed to object to or transfer the collection case while it was pending before the Cook County Circuit Court. These defenses are unavailing. As to Blatt's mitigation argument, that goes to damages, not liability (which is the only subject of the summary judgment motions). Regarding Blatt's waiver argument, "waiver is a deliberate relinquishment of a known right." *Higgins v. Mississippi*, 217 F.3d 951, 955 (7th Cir. 2000). There is no evidence in the record to suggest that Rowan deliberately gave up his venue claim, or that he knew he had a venue claim. Moreover, as other courts have explained, to require an unsophisticated consumer like Rowan "to exercise his rights under the FDCPA immediately or lose them

---

[2]For those reasons, the Court respectfully disagrees with the holding of *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 2015 WL 4253795, at *4 (N.D. Ill. July 14, 2015).

[would be] contrary to the basic premise of the [FDCPA], which is to protect unsophisticated debtors from debt collectors who may use the legal system, about which the consumer has little knowledge," to gain an unfair advantage. *Blakemore v. Pekay*, 895 F. Supp. 972, 943-84 (N.D. Ill. 1995) (internal quotations omitted). Finally, because the issue of venue was never raised before the Cook County Circuit Court, the issue was never actually litigated; therefore, issue preclusion does not act as a bar to Rowan's claim. *See Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987) (explaining that one of the four requirements necessary for issue preclusion is that "the issue must have been actually litigated").

Because all of Blatt's affirmative defenses that apply to the question of liability fail, the Court denies Blatt's motion for summary judgment and grants summary judgment in Rowan's favor on Blatt's affirmative defenses.

### 2. Rowan's Request for Summary Judgment on Liability

Rowan separately requests that summary judgment be granted in his favor on his venue claim. To secure summary judgment in his favor, Rowan must not only defeat all of Blatt's affirmative defenses to liability, as he has done, but also prove the elements of his claim, including (1) that he is a consumer; (2) that Blatt is a debt collector; (3) that Blatt brought legal action on a debt; and (4) that Blatt violated a section of the FDCPA. *See Portalatin*, 2015 WL 5117077 at *5. Rowan has satisfied all but one element of his claim—that he is a consumer. The FDCPA defines "consumer" as "[a] natural person" who is "obligated to pay [a] debt" incurred "primarily for personal, family or household purposes." 15 U.S.C. § 1692a(3) & (5).

What Rowan has failed to show (for now) is that his debt was incurred primarily for personal, family, or household purposes. In support of this element, Rowan merely states that the record indicates that his "underlying car loan was incurred to purchase a 2003 Cadillac Deville" and that "he has been employed full time by Cardinal Building Maintenance as an electrician for the last [eight] years." R. 40, Pl.'s Reply Br. at 10. According to Rowan, this evidence shows that his car loan could not have been incurred "for anything but a personal purpose." *Id.* But that evidence cited by Rowan's Local Rule 56.1 Statement is a snippet of Rowan's deposition testimony that establishes very little. R. 34 ¶ 6, (citing Rowan Dep. 9:8-10:2). All it says is that Rowan took out the loan; it does not actually state whether the *purpose* of the loan was for a personal purpose. *Id.* A reasonable jury could find, at least based on the record as it currently stands, that Rowan did not carry his burden (he does bear the burden of proof) that the loan was for personal purposes. Indeed, also in his deposition, Rowan testified that he has worked for Cardinal Building Maintenance for several years, providing electrical services—and that his job requires him to go out and perform maintenance services for other companies at other buildings. DSOF, Exh. 2 at 4. These facts at least suggest that Rowan could have purchased the car for a business purpose, rather than for a personal purpose. To be sure, it is quite possible that Rowan could supply a declaration in a second-round motion (and he should have the first time around) that will satisfy the element. The declaration should provide, if accurate, specific facts showing that the car was used primarily for personal reasons, and should state whether the car was

17

used in part for work purposes. If the car was used in part for work purposes, the declaration must explain how often and to what extent, and also whether Rowan's employer reimbursed him for the use. A briefing schedule for the motion will be set at the next status hearing. But for now, Rowan has failed to satisfy a necessary element of his claim.

As to the other elements, Rowan has satisfied them. Although Blatt appears to dispute whether it is a debt collector under the FDCPA, there is no question that it is. *See* DSOF, Exh. 1 at 43. In fact, Blatt even identified itself as a debt collector in several of its communications with Rowan. *Id.* at 46-47. The record likewise shows that Blatt brought suit against Rowan to collect on a debt, *id.* at 45-47, and as discussed above, that Blatt violated the venue provision of the FDCPA when it filed its collection suit in Cook County's First Municipal District.

### B. FDCPA § 1692f Challenge

Blatt also moves for summary judgment on Rowan's final claim: that Blatt violated § 1692f of the FDCPA when it "unfairly attempted to garnish [Rowan's] wages after he made timely payments as agreed [to] by the parties." Def.'s Br. at 15. Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This section has been interpreted broadly, and generally allows a court to sanction any improper conduct that the FDCPA fails to specifically address. *See Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 n.10 (C.D. Cal. 1991); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Penn. 1996). Presumably,

18

the violation of an agreement like the one presented here (assuming such an agreement exists) could constitute "unfair or unconscionable means" under this provision.

Blatt contends, however, that it does not matter whether breaching such an agreement violates § 1692f because the parties in this case never actually reached an agreement. According to Blatt, when Rowan sent back a signed copy of the agreement in April with the initial payment date crossed off and a new payment date written in, Rowan had actually rejected the original offer and provided a counteroffer. *See Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432 (7th Cir. 1993) (under Illinois contract law, an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed). To have a binding agreement, Blatt argues, it needed to accept Rowan's counteroffer, which Blatt argues it never did. *See id.* But it is possible that Blatt did accept Rowan's counteroffer. When Rowan sent the agreement back to Blatt, he also sent $170, or one month's payment under the agreement. Blatt accepted that payment. Under Illinois law, conduct—like accepting payment—can show acceptance. *See Bull v. Mitchell*, 448 N.E.2d 1016, 1023 (Ill. App. 1983) ("An agreement may be inferred from the acts or conduct of the parties instead of their spoken words ...." (citing *In re Brumshagen's Estate*, 169 N.E.2d 112 (Ill. App. 1960)). So a reasonable jury could find that by accepting Rowan's $170 payment, Blatt accepted Rowan's counteroffer and created a binding agreement between the

19

parties. At the very least, a genuine issue of material fact exists making summary judgment inappropriate. Blatt also makes much of the fact that Rowan's counteroffer came after the Circuit Court of Cook County had already issued a default judgment against him. Blatt asserts that because the court had already issued its judgment, any payment Blatt accepted from Rowan after that judgment was entered must be considered "voluntary payments … made toward satisfying the judgment." Def.'s Br. at 17. To the contrary: just because Blatt had a default judgment against Rowan at the time does not mean that Blatt and Rowan could not have reached a legally binding agreement regarding how that judgment was to be collected. Accordingly, because there is a genuine issue of material fact on whether an agreement was reached between the parties, the Court denies Blatt's motion for summary judgment on Rowan's § 1692f claim.

## IV. Conclusion

For the reasons stated above, the Court denies Blatt's motion for summary judgment; grants Rowan's motion for summary judgment with regard to Blatt's affirmative defenses on liability; and otherwise denies Rowan's motion. But, as explained earlier, the Court authorizes Rowan to renew his summary judgment motion to address whether he is a "consumer." If that motion is granted, then liability will be satisfied on the venue claim and only damages would remain as to that claim (the § 1692f claim on the garnishment also remains in the case). The Court will set the briefing schedule on the consumer-element issue at the November 5, 2015 status hearing. Before the next status hearing, by October 22, 2015, Rowan

will supply a declaration to Blatt on the consumer issue, and the parties must confer by November 2, 2015, on how to move the case forward (including whether Blatt is willing to concede on the consumer element).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 8, 2015